

2008 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

3-17-2008

# People Against Pol v. Pittsburgh

Precedential or Non-Precedential: Precedential

Docket No. 06-4457

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2008

Recommended Citation

"People Against Pol v. Pittsburgh" (2008). *2008 Decisions.* Paper 1345.
http://digitalcommons.law.villanova.edu/thirdcircuit_2008/1345

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2008 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

PRECEDENTIAL

IN THE UNITED STATES COURT
OF APPEALS
FOR THE THIRD CIRCUIT

NO. 06-4457

PEOPLE AGAINST POLICE VIOLENCE;
THOMAS MERTON CENTER; NATIONAL
ASSOCIATION FOR THE ADVANCEMENT
OF COLORED PEOPLE, Pittsburgh Branch

v.

CITY OF PITTSBURGH
Appellant

On Appeal From the United States District Court
For the Western District of Pennsylvania
(D.C. Civil Action No. 03-cv-01649)
District Judge:  Hon. Joy F. Conti

Argued December 11, 2007

BEFORE:  RENDELL and STAPLETON, *Circuit Judges*, and IRENAS,* *District Judge*

(Opinion Filed    March 17, 2008  )

Michael J. Healey
Douglas B. McKechnie
Healey & Hornack
The Pennsylvanian - Suite C-2
1100 Liberty Avenue
Pittsburgh, PA  15222

Witold J. Walczak (Argued)
Sara H. Rise
American Civil Liberties Foundation of Pennsylvania
313 Atwood Street
Pittsburgh, PA  15213
  Attorneys for Appellees

Yvonne S. Hilton (Argued)
Diego Correa
Michael E. Kennedy
Assistant City Solicitor
George R. Specter
Acting City Solicitor
City of Pittsburgh Department of Law
313 City-County Building
414 Grant Street
Pittsburgh, PA  15219
  Attorneys for Appellant

*Hon. Joseph Irenas, Senior District Judge for the District of New Jersey, sitting by designation.

———————

OPINION OF THE COURT

———————

STAPLETON, Circuit Judge:

In this appeal we review a District Court's order awarding attorneys' fees to plaintiffs pursuant to 42 U.S.C. § 1988(b). Plaintiffs brought this lawsuit to challenge the constitutionality of the City of Pittsburgh's ("City's") ordinance regulating expressive activities in public forums. Plaintiffs' complaint sought declaratory and permanent injunctive relief; plaintiffs also filed a motion for interim injunctive relief. The District Court granted plaintiffs' motion and issued a preliminary injunction which prohibited the City from enforcing the challenged ordinance and imposed temporary procedures to govern the issuance of permits for expressive activities in public spaces until the City passed a new ordinance. The District Court also directed the parties to meet and confer regarding the City's proposals to revise the ordinance and supervised that process as disputes arose. The Court lifted the preliminary injunction and closed the case only after the City passed a revised ordinance which, the parties agreed, corrected all of the alleged constitutional infirmities of the challenged ordinance.

3

Although several of our sister Courts of Appeals have confronted the question, this appeal requires us to determine for the first time whether 42 U.S.C. § 1988 allows a plaintiff to be the "prevailing party" when it achieves relief on the merits of its claims in the form of a preliminary injunction, but does not secure a final judgment in its favor. Under the circumstances of this case, we find that it does. Because we conclude that plaintiffs were the "prevailing party" in this litigation and that the District Court's fee award was reasonable, we will affirm the order of the District Court.

## I.

Plaintiffs People Against PoliceViolence ("PAPV"), Thomas Merton Center, and the National Association for the Advancement of Colored People, Pittsburgh Branch, filed a lawsuit under 42 U.S.C. § 1983 raising First Amendment challenges to Chapter 603 of the Pittsburgh City Code, Pittsburgh's ordinance regulating parades and crowds in public forums. Plaintiffs alleged that on October 3, 2003, PAPV requested a permit from the City of Pittsburgh for a parade to the Allegheny County Courthouse and a rally at the Courthouse, to be held on November 1, 2003. The City informed PAPV that it would grant the permit only on the condition that PAPV pre-pay costs for police protection. Plaintiffs brought this lawsuit on October 28, 2003 – four days prior to the planned event – because, they asserted, as of that date the City had yet to notify PAPV of the amount of the costs being assessed or to issue the requested permit. The complaint also alleged that PAPV is a small organization which could afford no more than a nominal fee.

Plaintiffs' complaint detailed the City's handling of PAPV's permit request and set forth a long history of prior alleged First Amendment abuses under Chapter 603. It alleged that the City's permitting procedures were unconstitutional, both facially and as-applied, in at least three ways: (1) they gave City officials excessive discretion regarding the use of public forums; (2) they imposed unconstitutional financial obligations on groups wishing to engage in expressive activities; and (3) they lacked sufficient procedural due process protections. The complaint also averred that plaintiffs intend to continue organizing and sponsoring marches and rallies in the future. Plaintiffs requested a declaration that Chapter 603 violated the Constitution, a declaration that the City's assessment of security costs to plaintiffs violated the Constitution, and a permanent injunction preventing the City from enforcing the ordinance and from charging event sponsors for security-related costs.[1] Plaintiffs also filed a motion for a temporary restraining order ("TRO") and/or preliminary injunction.

At the initial hearing before the District Court, held on October 31, 2003, the City represented that it was no longer enforcing Chapter 603 and that it would prepare a revised ordinance to replace it. The City also acknowledged, however, that it had not repealed Chapter 603 and that it had instituted no alternate procedures to govern the issuance of permits for public

---

[1]The complaint also requested an award of plaintiffs' costs and attorneys' fees pursuant to 42 U.S.C. § 1988, and "such other relief as this Court may deem just and appropriate to protect plaintiffs' constitutional rights." App. at 20.

expressive activities in the interim. The Court granted plaintiffs' motion for temporary injunctive relief, concluding that Chapter 603 "was facially unconstitutional under the First Amendment . . . as applied to the states through the due process clause of the Fourteenth Amendment." App. at 31. It also ruled that, if the City no longer enforced that ordinance, a permit regime devoid of any prescribed process would also be unconstitutional. The Court's TRO prohibited the City from enforcing Chapter 603, prohibited the City from assessing security-related costs to permit applicants, and imposed temporary procedures to govern the City's issuance of permits until the City passed a constitutionally adequate ordinance. The Court also directed the parties to meet and confer regarding the City's proposed revisions and ordered the City to submit its proposals to the Court.

The City submitted its initial proposal for a revised ordinance shortly thereafter. At a second hearing before the District Court, on November 25, 2003, the Court heard arguments regarding the proposal and, without ruling on the constitutionality of it, indicated that it found several aspects of the proposal constitutionally problematic and gave the City a "clear signal" that at least one aspect of it "would make [the ordinance] facially unconstitutional." App. at 90. The Court converted its TRO into a preliminary injunction and continued it otherwise unchanged. The Court also requested further briefings from the parties regarding particular aspects of the draft ordinance which the Court found troubling. The City took no appeal from the entry of the preliminary injunction.

The City presented a second draft of its revised ordinance

to plaintiffs in December 2003. The City formally repealed Chapter 603 on February 24, 2004, and promptly filed a motion to lift the injunction and dismiss the lawsuit as moot.

At a third hearing held on February 27, 2004, the Court heard testimony and argument regarding the City's motion to dismiss and regarding the terms of the permitting procedures set forth in the preliminary injunction. The Court also entertained arguments by plaintiffs that the City's response to recent permit applications had violated the preliminary injunction, and that the City's second draft ordinance failed to address some of their core complaints regarding, for example, the City's assessment of fees and costs. The Court denied the City's motion to dismiss, finding that, because the City had merely repealed Chapter 603 but had yet to adopt any procedures to take its place, the action was not moot. The Court also indicated that the City had violated the injunction. After the Court denied the City's motion to dismiss, the City consented to the injunction, and the Court therefore continued the preliminary injunction in effect with certain modifications agreed to by the parties.

Following the February 2004 hearing, the District Court retained jurisdiction over the case, continued the injunction and supervised the parties' meet and confer process until the City enacted a new ordinance and implementing regulations which, the parties agreed, complied with the Constitution. That process proved to be a protracted one. The City presented further drafts of its revised ordinance which, plaintiffs argued, continued to include certain provisions which would violate the District Court's injunction and the Constitution. Although plaintiffs briefed and argued those contentions before the Court, the City

7

never pressed the Court to reach a judgment on the merits of any of plaintiffs' claims; it eventually acceded to each. Ultimately, in early 2006, the City passed a new ordinance and implementing regulations which satisfied all of plaintiffs' concerns. At that point the Court lifted the injunction and closed the case with the agreement of the parties.

Thereafter, PAPV filed a motion for attorneys' fees under 42 U.S.C. § 1988. The Court concluded that plaintiffs were the "prevailing party" and ordered the City to pay attorneys' fees and costs totaling $103,718.89. The City now appeals the Court's fee award.

## II.

The District Court had jurisdiction over this § 1983 action pursuant to 28 U.S.C. §§ 1331 and 1343. This Court has appellate jurisdiction pursuant to 28 U.S.C. § 1291 over the District Court's order awarding attorneys' fees to plaintiffs.

We exercise plenary review over legal issues relating to the appropriate standard under which to evaluate an application for attorneys' fees. *J.O. ex rel. C.O. v. Orange Twp. Bd. of Educ.*, 287 F.3d 267, 271 (3d Cir. 2002). We review the reasonableness of the District Court's award of attorneys' fees for abuse of discretion. *City of Morris v. Nationalist Movement*, 273 F.3d 527, 535 (3d Cir. 2001).

## III.

The City contends that the District Court erred when it

8

found that plaintiffs were the "prevailing party" in this litigation. Accordingly, we must first decide whether, under the circumstances of this case, "prevailing party" status can be predicated on plaintiffs' having secured the preliminary injunction. The City also challenges the reasonableness of the District Court's fee award.[2]

---

[2]In addition, the City insists that the District Court's involvement in this case exceeded its jurisdiction and its authority under Article III of the Constitution. These arguments are unavailing. It is well settled that the voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of that practice, if the conduct might reasonably be expected to recur. *Friends of the Earth, Inc. v. Laidlaw Envtl. Serv., Inc.*, 528 U.S. 167, 189 (2000). It is also clear that the repeal of a challenged ordinance does not necessarily moot a challenge to the constitutionality of that ordinance if the ordinance, or one with similar constitutional infirmities, might be reenacted. *Ne. Fla. Chapter of Associated General Contractors of America v. City of Jacksonville*, 508 U.S. 656, 662 (1993); *City of Mesquite v. Aladdin's Castle, Inc.*, 455 U.S. 283, 289 (1982). Therefore, neither the City's initial representation that it would no longer enforce Chapter 603 nor its formal repeal of that ordinance a few months later deprived the District Court of jurisdiction, particularly given that plaintiffs' complaint alleged a long history of unconstitutional conduct under the ordinance; the City had no alternate procedures in place pending revision of Chapter 603; and the City's initial proposals to amend Chapter 603 gave the Court cause for concern that a new ordinance would have similar

A

Under the "American Rule," parties to litigation are to pay their own attorneys' fees, absent statutory authority and a court order providing otherwise. *Buckhannon Bd. and Care Home, Inc. v. West Virginia Dep't. of Health and Human Resources*, 532 U.S. 598, 602 (2001). In civil rights cases, Congress has provided such authorization: courts "may allow the prevailing party . . . a reasonable attorney's fee." 42 U.S.C.

---

constitutional infirmities.

Contrary to the City's suggestions, we do not view the District Court as having involved itself in the operation of a local government. The Court never imposed any particular ordinance on the City, and it never held that the City was precluded from passing any particular ordinance. It merely held that the City was required either to pass an ordinance that was consistent with the Court's injunction – which the Court carefully tailored after hearing briefings, argument and testimony from both sides – or to brief the Court regarding why it should not be required to do so and seek a judgment on the merits of its procedures. Indeed, the City initially passed a new ordinance which, plaintiffs argued, was inconsistent with the Court's injunction and failed to correct certain constitutional infirmities of the prior ordinance. The Court merely instructed the City to brief it regarding why the City disagreed, or to correct the problem. The City chose to correct the problem in implementing regulations rather than to defend the merits of its ordinance. The Court in no way injected itself into the legislative process.

10

§ 1988(b) ("§ 1988"). Pursuant to this authority, the "prevailing party" in such cases is normally awarded attorneys' fees, absent special circumstances. *Truesdell v. Philadelphia Hous. Auth.*, 290 F.3d 159, 163 (3d Cir. 2002); *City of Morris v. Nationalist Movement*, 273 F.3d 527, 535 (3d Cir. 2001).[3]

Parties are considered "prevailing parties" if "they succeed on any significant issue in litigation which achieves some of the benefits the parties sought in bringing suit." *J.O. ex rel. C.O. v. Orange Twp. Bd. of Educ.*, 287 F.3d 267, 271 (3d Cir. 2002) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)) (internal quotation marks omitted). To "succeed" under this standard, a party must achieve a "court-ordered 'change in the legal relationship between the plaintiff and the defendant.'" *Buckhannon*, 532 U.S. at 604 (quoting *Texas State Teachers Ass'n v. Garland Indep. Sch. Dist.*, 489 U.S. 782, 792 (1989)). Therefore, courts may not award fees based on a "catalyst theory;" a plaintiff does not become a "prevailing party" solely because his lawsuit causes a voluntary change in the defendant's conduct. In that situation, the change in legal relationship lacks the requisite "judicial imprimatur." *Id*. at 601, 605.

The Supreme Court recently held that securing temporary relief in the form of a preliminary injunction does not make the plaintiff a "prevailing party" for purposes of § 1988 if the plaintiff ultimately loses on the merits. *Sole v. Wyner*, __ U.S. __, 127 S.Ct. 2188 (2007). Success achieved in a preliminary

---

[3]Congress utilizes the term "prevailing party" consistently, as a term of art, in many statutes. *Buckhannon*, 532 U.S. at 603.

11

injunction, the Court explained, does not render a party "prevailing" if that success is ultimately "reversed, dissolved, or otherwise undone by the final decision in the same case." *Id*. at 2195. However, *Sole* expressly reserved for another day the issue presented in this case: whether, "in the absence of a final decision on the merits of a claim for permanent injunctive relief, success in gaining a preliminary injunction may sometimes warrant an award of counsel fees." *Id*. at 2196.

The Supreme Court affirmed in *Buckhannon* that litigation need not progress to a final judgment on the merits for a § 1988 fee award to be proper. For example, a settlement agreement enforced through a consent decree can serve as the basis for an award of attorneys' fees in an appropriate situation. *Buckhannon*, 532 U.S. at 604. *See also P.N. ex rel. M.W. v. Clementon Bd. of Educ.*, 442 F.3d 848 (3d Cir. 2006); *Truesdell*, 290 F.3d at 165 (3d Cir. 2002). However, "[r]espect for ordinary language requires that a plaintiff receive at least some relief on the merits of his claims before he can be said to prevail." *Buckhannon*, 532 U.S. at 603-04. Similarly, this Court has held that "stay put" orders which merely serve to maintain the status quo *pendente lite* do not afford meaningful relief on the merits of the underlying claims and will not suffice. *John T. ex rel. Paul T. v. Del. County Intermediate Unit*, 318 F.3d 545, 558-59 (3d Cir. 2003)*; J.O. ex rel. C.O.*, 287 F.3d at 272-73.

Although this Court has never had occasion to decide whether relief on the merits achieved in the form of a preliminary injunction can confer "prevailing party" status, nearly every Court of Appeals to have addressed the issue has held that relief obtained via a preliminary injunction can, under

12

appropriate circumstances, render a party "prevailing."[4]   We

[4]Several Courts of Appeals have held, or reaffirmed, subsequent to *Buckhannon* that fee awards may be predicated on success achieved in preliminary injunctions even if the case never proceeds to a final judgment on the merits.  *Select Milk Producers, Inc. v. Johanns*, 400 F.3d 939, 945-50 (D.C. Cir. 2005); *Watson v. County of Riverside*, 300 F.3d 1092, 1095-96 (9th Cir. 2002); *Dupuy v. Samuels*, 423 F.3d 714, 718-25 (7th Cir. 2005); *Dubuc v. Green Oak Twp.*, 312 F.3d 736, 753-54 (6th Cir. 2002).   Similarly, the Eleventh Circuit Court of Appeals upheld a fee award based on relief obtained in a preliminary injunction prior to the Supreme Court's decision in *Buckhhannon*, but in so doing it emphasized that it reached that result without recourse to a "catalyst rule," because "[t]he 'catalyst' test is utilized primarily in the *absence* of formal judicial relief."  *Taylor v. City of Fort Lauderdale*, 810 F.2d 1551, 1560 (11th Cir. 1987) (emphasis in original).  That Court has reached the same result subsequent to *Buckhannon* in unpublished opinions.  *See, e.g.*, *Wyner v. Struhs*, 179 Fed. Appx. 566 (11th Cir. 2006).

At least one additional Court of Appeals has strongly suggested that it  would reach the same result if presented with a comparable situation.  *See Northern Cheyenne Tribe v. Jackson*, 433 F.3d 1083, 1086 (8th Cir. 2006) ("Most of our sister circuits have concluded that some preliminary injunctions are sufficiently akin to final relief on the merits to confer prevailing party status . . . .  We are inclined to agree.") (internal citation omitted).

We find only one arguably dissenting Court of Appeals.

13

agree. Moreover, we conclude that this case involves appropriate circumstances.

B

This is a case in which (1) the trial court, based upon a finding of a likelihood of plaintiffs' success on the merits, entered a judicially enforceable order granting plaintiffs virtually all the relief they sought, thereby materially altering the legal relationship between the parties; (2) the defendant, after opposing interim relief, chose not to appeal from that order and remained subject to its restrictions for a period of over two years; and (3) the defendant ultimately avoided final resolution of the merits of plaintiffs' case by enacting new legislation giving plaintiffs virtually all of the relief sought in the complaint. In these circumstances, we conclude that the District Court did not err in finding plaintiffs to be a "prevailing party" for purposes of § 1988(b).

A "preliminary injunction issued by a judge carries all of the 'judicial imprimatur' necessary to satisfy *Buckhannon,*" *Watson*, 300 F.3d at 1096,[5] and this preliminary injunction

_____

*Smyth v. Rivero*, 282 F.3d 268, 276-77 (4th Cir. 2002).

[5]We need not determine in this case the outer limits of the requisite "judicial imprimatur." *Buckhannon*, 532 U.S. at 605. Whatever those may be, preliminary injunctions are certainly within them. Preliminary injunctions are, of course, immediately appealable and subject to judicial enforcement. 28

14

placed a judicial imprimatur on plaintiffs' entitlement to substantially all the relief they sought in the complaint. This was not a case where the filing of the lawsuit resulted in voluntary change on the part of the City. It was precisely because the Court believed voluntary change was not to be expected that it ordered the City not to engage in the practices of which plaintiffs complained. There was nothing voluntary about the City's giving up those practices. And the preliminary injunction was not "dissolved for lack of entitlement." *Id*. Rather, it was terminated only when the new statute was enacted "after the preliminary injunction had done its job." *Id*. The ultimate mooting of plaintiffs' claims resulted not solely from the filing of the lawsuit but from the results of the legal process. *See, e.g., Select Milk Producers, Inc.*, 400 F.3d at 947; *Watson*, 300 F.3d at 1095-96; *Dupuy*, 423 F.3d at 722; *Dubuc*, 312 F.3d at 753-54.

C

U.S.C. § 1292(a)(1); *Associated Bus. Telephone Sys. Corp. v. Greater Capital Corp.*, 861 F.2d 793, 795-96 (3d Cir. 1988). *Cf. P.N.*, 442 F.3d at 852-57 (consent decrees can confer "prevailing party" status if mandatory and subject to judicial enforcement). Although this Court has never held that "prevailing party" status is limited only to success obtained in "judgments" as opposed other court orders, we note that preliminary injunctions generally qualify as "judgments." Fed. R. Civ. P. 54(a) ("'Judgment' as used in these rules includes a decree and any order from which an appeal lies."). *See Select Milk Producers, Inc.*, 400 F.3d at 948-49.

15

The City resists this conclusion, arguing that (1) the District Court's preliminary injunction was akin to a "stay-put" order which did not address the merits of plaintiffs' claims; (2) plaintiffs achieved success in this litigation only through the City's voluntary actions; and (3) plaintiffs could not have "prevailed" in the process of drafting a new ordinance because those proceedings were superfluous and plaintiffs did not specifically request such relief in their complaint. We are not persuaded.

At the initial hearings in this case, plaintiffs achieved much of the relief they sought in this lawsuit. The District Court ruled that Chapter 603 was facially unconstitutional; it issued temporary injunctive relief preventing the City from enforcing that ordinance and from continuing specific challenged practices until the City passed an adequate ordinance; and it directed the City to submit its proposed revision to the Court and to confer with plaintiffs regarding the constitutionality of its proposal. Unlike in *John T. ex rel. Paul T.*, 318 F.3d at 558-59, the Court's TRO and preliminary injunction in this case did not simply maintain the status quo. Rather, the injunction afforded plaintiffs virtually all of the substantive relief they sought, albeit initially on an interim basis. Much like in *Select Milk Producers, Inc.*, 400 F.3d at 945-50, the Court's orders prevented plaintiffs from being forced to operate under an unlawful regime – the fundamental goal they sought. *See also Watson*, 300 F.3d at 1095-96 (discussing *Williams v. Alioto*, 625 F.2d 845, 847 (9th Cir. 1980)). The preliminary injunction, therefore, did not merely maintain the status quo; it altered the legal relationship among the parties in a manner that afforded plaintiffs substantial relief on the merits of their claims.

16

While preliminary injunctions by their nature constitute provisional relief, this case is unlike *Sole*, 127 S.Ct. at 2194-96, where the initial relief plaintiffs achieved under the Court's injunction proved to be fleeting. It is also unlike *Dupuy*, 423 F.3d at 722, where the fee award was premature because further proceedings on the merits of the injunction were clearly contemplated. In this case, plaintiffs achieved precisely what they sought on an enduring basis – the permanent demise of the challenged ordinance, and in its place a system that satisfied plaintiffs' goals. When the City ultimately passed a new ordinance and implementing regulations which satisfied plaintiffs' demands, the Court closed the case with the agreement of the parties; at that point, plaintiffs' victories were no longer subject to reconsideration on the merits in this case. The fact that plaintiffs achieved their success by litigating and enforcing a preliminary injunction rather than by proceeding to final judgment on the merits does not diminish the substance of their litigated victories. The injunction did not merely maintain the status quo; it afforded plaintiffs lasting relief on the merits of their claims.

The City's assertion that plaintiffs achieved success only through the City's voluntary actions is equally untenable. *See Buckhannon*, 532 U.S. at 605-09 (precluding fee awards based on a "catalyst theory"). Although the City mounted no defense to the constitutionality of Chapter 603, it opposed the TRO and preliminary injunction at the first two hearings in this case and sought to continue certain challenged practices which the injunction prevented. Prior to the third hearing, the City filed a motion to dismiss the lawsuit entirely; it ultimately consented to the injunction (with certain modifications) only after that motion

17

was denied. Even thereafter, of course, the preliminary injunction remained mandatory and subject to judicial enforcement. *See P.N. ex rel. M.W.*, 442 F.3d at 855-56; *Truesdell*, 290 F.3d at 165.

Finally, we find that the District Court did not err when it deemed plaintiffs the "prevailing party" not only for achieving the preliminary injunction initially, but also for the subsequent process of litigating the consistency of the City's draft revisions with the Court's injunction and the First Amendment.[6] The demise of Chapter 603 did not moot the action. *See supra* note 1. Plaintiffs' complaint challenged not just the terms of Chapter 603 itself but also the City's "long history of using and misusing the foregoing provisions to arbitrarily and discriminatorily discourage or impede groups and organizations disfavored by the City's leadership from exercising their First Amendment rights." App. at 11. The complaint challenged not only the excessive discretion the ordinance afforded City officials but also the City's pattern of employing specific, allegedly unconstitutional, practices such as security related fees, excessive administrative fees even for indigent applicants,

_____

[6]Contrary to the City's assertion, the fact that plaintiffs' complaint had requested permanent injunctive relief rather than a Court-supervised revision of the challenged ordinance, alone, certainly did not render plaintiffs' successes in the subsequent proceedings beyond the scope of § 1988. *J.O. ex rel. C.O.*, 287 F.3d at 271 ("The relief need not be the exact relief requested as long as it goes toward achieving the same goal.") (internal quotations omitted).

unconstitutional insurance-bond requirements and indemnity agreements, unconstitutionally-long advance notice requirements and failing to respond to permit requests in a timely manner. The complaint sought not only the "demise" of Chapter 603 but also permanent injunctive relief preventing the City from engaging in such practices. The District Court found that, even after the repeal of Chapter 603, the City's lack of guidelines for granting permits was *per se* unconstitutional and would permit the City to continue the challenged practices. *See Lakewood v. Plain Dealer Pub. Co.*, 486 U.S. 750 (1988); *Forsyth County v. Nationalist Movement*, 505 U.S. 123 (1992). The Court also found reason to be troubled by the City's initial proposals to replace Chapter 603 and indicated that the City had continued to employ some of the challenged practices even after the Court issued the injunction prohibiting them. The "demise" of Chapter 603 in no way ended the litigation and the proceedings thereafter were far from "superfluous."

We also disagree with the City insofar as it seeks to characterize the proceedings following the entry of the preliminary injunction and the repeal of Chapter 603 as lacking the requisite "judicial imprimatur." This Court, like other Courts of Appeals, allows fees to be awarded for monitoring and enforcing Court orders and judgments. *See, e.g.*, *Daggett v. Kimmelman*, 811 F.2d 793, 801 (3d Cir. 1987); *Jenkins by Jenkins v. Missouri*, 127 F.3d 709, 716-17 (8th Cir. 1997); *Diaz v. Romer*, 961 F.2d 1508, 1511-12 (10th Cir. 1992). Plaintiffs argued at the November 25, 2003, hearing that the City had violated the injunction and that the City's proposed revision would be unconstitutional. The Court agreed. The Court did not lift the injunction for more than two years thereafter because

19

the City continued to press revisions which, plaintiffs argued, contained provisions that were inconsistent with the injunction and would have contravened the protections of the First Amendment. The City complains that the District Court's meet and confer process lacked "judicial imprimatur" because it was proactive and cooperative: the Court's process allowed plaintiffs to raise, and the parties and Court to discuss and resolve, the bulk of plaintiffs' challenges to the City's draft revisions before the City actually passed and enforced its new ordinance. However, while the injunction remained in effect plaintiffs certainly would have been entitled to challenge the enforcement of any revised ordinance actually passed by the City, forcing the Court to reach a judgment on the merits. The proceedings in this case merely allowed plaintiffs to raise their concerns prior to enforcement, a process that reached the same result (resolution of plaintiff's claims) with greater judicial efficiency. We see no reason why plaintiffs should be denied fees merely because they participated in a more efficient, cooperative process; a contrary result would force future litigants in plaintiffs' position to prolong litigation unnecessarily to assure entitlement to fees.

At the end of the proceedings, plaintiffs had achieved precisely what they sought on an enduring basis, and that success was a result of plaintiffs' efforts and court-enforced victories rather than defendant's voluntary actions. The District Court did not err when it based the lodestar on the full duration of the proceedings. *Hensley v. Eckerhart*, 461 U.S. 424, 435 (1983) ("Where a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee").

20

D

The City also challenges the reasonableness of the Court's award of attorneys' fees. While the City enumerates a long list of complaints regarding the Court's calculation of attorneys' fees, each of those complaints is based on the same premises: that, under *Hensley*, 461 U.S. 434-35, the Court abused its discretion by allowing fees either for "unsuccessful" claims or for "excessive, redundant or unnecessary claims." Appellant's Br. at 30-31. These arguments are foreclosed by our conclusion *supra* that the Court did not misinterpret the applicable standards when it concluded that plaintiffs were the "prevailing party" for the duration of the litigation. As explained above, plaintiffs were entirely successful, and there was nothing "superfluous," Appellant's Br. at 33, about the hearings and proceedings subsequent to the issuance of the TRO and preliminary injunction.

The District Court carefully reviewed plaintiffs' fee request and reduced the time submitted therein for certain hours that the Court found non-compensable.[7] Litigation in this matter spanned nearly three years (prior to plaintiffs' motion for

---

[7]The Court denied compensation for time spent at City Council hearings and in correspondence with City officials and Council members; it made a discretionary reduction for duplicative time resulting from the presence of two plaintiffs' attorneys at Court hearings and conferences; and it made a partial reduction for certain time spent on research ("re-reading of cases").

21

attorneys' fees), in large part because the City repeatedly pressed provisions which the Court found to be unconstitutional and in contravention of its preliminary injunction, thus prolonging the litigation. By enforcing the injunction and litigating disputes regarding the permissibility of the City's revisions, plaintiffs ultimately achieved all of the substantive relief they sought on an enduring basis. The District Court did not abuse its discretion by awarding a "fully compensatory fee." *Hensley*, 461 U.S. at 435.

## IV.

For the foregoing reasons, we will affirm the judgment of the District Court.