NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 18-2737
_____

TILDEN RECREATIONAL VEHICLES, INC.
d/b/a Boat-N-RV Superstore, a New York Corporation

v.

GEORGE BELAIR,
                              Appellant
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Civil No. 5-17-cv-01406)
District Judge: Jeffrey L. Schmehl
_____

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
on April 17, 2019

Before: AMBRO, GREENAWAY, JR., and SCIRICA, *Circuit Judges.*

(Filed:  September 5, 2019)


_____

OPINION[*]
_____

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

**SCIRICA**, *Circuit Judge*

When George Belair joined Tilden Recreational Vehicles, Inc., d/b/a Boat-N-RV Superstore ("BNRV") as a sales representative, he signed an employment non-compete agreement stating he could not work in recreational vehicle sales within fifty miles of BNRV for a year after his employment. When Belair left BNRV for its competitor Chesaco, BNRV sued for breach of contract. Upon BNRV's request the District Court granted a preliminary injunction enforcing a modified, less-restrictive version of the agreement.

The District Court did not abuse its discretion in concluding BNRV was entitled to preliminary relief. Because Belair received significant training specific to RV sales, including confidential information regarding BNRV's pricing and sales strategies relative to competitors, BNRV showed it likely had several legitimate protectable interests in restraining Belair's employment to the extent the District Court did so. Nor did the District Court err in finding the remaining equitable factors supported BNRV's motion for preliminary injunction. The District Court, though, was required to consider Federal Rule of Civil Procedure 65(c)'s bond requirement before issuing the preliminary injunction. Because it did not do so, we must vacate the preliminary injunction and, without disturbing the District Court's other holdings, remand with instructions to consider an appropriate bond should the District Court reissue the injunction.

**I.**

Belair started work as a Product Specialist selling RVs and boats at BNRV in

2

Hamburg, Pennsylvania in February 2016. His background included past work in sales, but he had no prior experience in the RV industry. At the start of his employment, Belair signed BNRV's Confidentiality/Non-Compete Agreement, a restrictive covenant limiting Belair's employment and his disclosure of BNRV's confidential information after his employment with BNRV. With respect to future employment, the agreement provided, "Employee shall not accept employment with any Company and/or establishment whose primary business is the sale and/or service of new and/or used . . . Recreational Vehicles/Camper . . . located within fifty (50) miles radius of any of the Company's locations for a period of one (1) year . . . Employee agrees that the scope and duration of the non-competition/non-solicitation provisions are both reasonable and necessary to protect the Company." *Tilden Recreational Vehicles, Inc. v. Belair*, No. 17–1406, 2018 WL 3350399, *2 (E.D. Pa. July 9, 2018). The agreement also included provisions restricting the disclosure of confidential information and promising attorneys' fees to BNRV in the event of litigation, among other terms. Belair discussed these provisions with BNRV's Human Resources director and understood them; he also understood he would not be hired unless he signed the agreement. After starting at BNRV, Belair first spent several days receiving training and reviewing BNRV's training materials.

About a year later, Belair was contacted by Chesaco, an RV dealer with a location in Shoemakersville, Pennsylvania, about ten miles from BNRV. Chesaco hoped to recruit Belair as a sales representative. Belair accepted an offer from Chesaco and resigned from BNRV in March 2017. In response to Belair's resignation, BNRV told Belair it planned to enforce the non-compete agreement and also offered Belair a potentially more

favorable, commission-only pay package. Belair refused the counter-offer and started work at Chesaco.

After notifying Belair it would do so, BNRV sued Belair to enforce the agreement. In addition to its claim of breach of the agreement's employment provisions, BNRV's suit included a claim of breach of the agreement's non-disclosure provisions, and claims of misappropriation of trade secrets. On the day of filing, the District Court granted BNRV a temporary restraining order enjoining Belair from working at Chesaco or any other BNRV competitor within fifty miles "in regard to customer sales" and from disclosing any of BNRV's trade secrets. *Id*. at \*1. The District Court did not require BNRV to post an injunctive bond at the time of the grant of the initial TRO, nor with any successive modification of the TRO. A bond would have secured Belair against any damages incurred while the restrictions were in effect, should it later be determined Belair was wrongfully enjoined. *See* Wright & Miller, 11A Fed. Prac. & Proc. Civ. § 2954 (3d ed. 2019).

In April 2017, after a hearing, the District Court continued its TRO, but modified it to permit Belair to work at Chesaco's Fredericksburg location. Chesaco Fredericksburg, although within fifty miles of BNRV, sells only used vehicles and was therefore determined not in direct competition with BNRV. In July 2017, at a second hearing, BNRV asked the District Court to continue the TRO through September 2017, when its interests in restraining Belair's employment would be significantly lessened with the yearly changeover of RV product lines. After considering the evidence, the District Court modified its order to vacate the restriction on Belair's employment

4

beginning August 4, 2017. Although the Court continued to denominate each of these successive orders as "temporary restraining orders," their length in force indicates they may also be considered preliminary injunctions. *See* 11A Fed. Prac. & Proc. Civ. § 2953 (3d ed. 2019).

Belair was thus ultimately prevented from working for Chesaco in any sales capacity from March 29 to May 17. He was prevented from working at his preferred Chesaco location, though permitted to work for Chesaco Fredericksburg, from May 17 to August 4, an additional two and a half months.

In 2018, after hearing additional testimony, the District Court issued a preliminary injunction which affirmed the propriety of its now-terminated restrictions on Belair's employment, and continued to enjoin Belair from violating any other terms of the agreement. The District Court again did not require a bond from BNRV and does not appear to have considered the issue, which was not raised by the parties.

Belair now makes an interlocutory appeal of the District Court's grant of preliminary relief, challenging the temporary restriction of his employment, the District Court's decision not to require a bond accompanying its TRO and preliminary injunction, and the District Court's award of attorneys' fees to BNRV. BNRV's underlying action against Belair has been stayed in the District Court pending appeal.

**II.**[1]

---

[1] The District Court had jurisdiction under 28 U.S.C. § 1332. We have jurisdiction under 28 U.S.C. § 1292 (a)(1). We review the District Court's fact findings for clear error, its legal conclusions *de novo*, and its procedural decisions including the ultimate decision to grant the injunction for abuse of discretion. *Zambelli Fireworks Mfg. Co. v.*

5

We first address the District Court's decision to grant preliminary relief to BNRV restricting Belair's employment. A movant for a preliminary injunction must first satisfy the two "most critical" factors: the movant must show "(1) a reasonable probability of eventual success in the litigation, and (2) that it will be irreparably injured . . . if relief is not granted." *Reilly v. City of Harrisburg*, 858 F.3d 173, 179, 176 (3d Cir. 2017) (alteration in original) (internal quotation marks and citation omitted). If these two factors are met, the District Court balances them in its equitable discretion alongside two others: "(3) the possibility of harm to other interested persons from the grant or denial of the injunction, and (4) the public interest." *Id.* at 176 (internal quotation marks and citation omitted). Here, the District Court made no error of law or fact and did not abuse its discretion in finding BNRV entitled to a preliminary injunction against Belair.

**A.**

BNRV's first task is to establish a likelihood of success on the merits in its breach of contract claim against Belair, meaning "a showing significantly better than negligible but not necessarily more likely than not." *Id*. at 179. To succeed in a breach of contract claim involving an employment non-compete agreement, BNRV would have to show the agreement was enforceable by meeting three conditions. The agreement must be "incident to an employment relationship between the parties; the restrictions imposed by the covenant are reasonably necessary for the protection of the employer; and the restrictions imposed are reasonably limited in duration and geographic extent." *Hess v.*

---

*Wood*, 592 F.3d 412, 418, 425 (3d Cir. 2010).

6

*Gebhard Co. & Inc.*, 808 A.2d 912, 917 (Pa. 2002). Both parties acknowledge the non-compete agreement was incident to Belair's employment, but Belair contests the other two conditions. The District Court, however, persuasively analyzed BNRV's interests in restricting Belair's employment with Chesaco, satisfying the second condition. Belair's objection as to the third condition, the agreement's geography and duration, also fails because he does not identify any specific aspect of the agreement he finds excessive.

**1.**

Belair argues the restrictive covenant was not reasonably necessary to protect BNRV's legitimate interests. Pennsylvania courts recognize several types of interests a post-employment restrictive covenant may serve. These include the employer's investment in training the employee, confidential employer information the employee possesses, and customer goodwill that would travel with the employee to a new place of employment. *Victaulic Co. v. Tieman*, 499 F.3d 227, 235 (3d Cir. 2007). Here, each of these three interests is at play. The District Court reasonably concluded the evidence supporting BNRV's legitimate interests in restricting Belair's employment was enough to demonstrate a likelihood of success.

First, BNRV claims an interest in the training it gave Belair, and in preventing that training from benefitting its competitor Chesaco. A non-compete agreement may be used to protect an employer's investment in training an employee when, through the employer's efforts, the employee "acquired and developed unique skills that are very specific to the [employer's] industry." *Zambelli Fireworks Mfg. Co. v. Wood*, 592 F.3d 412, 424 (3d Cir. 2010). Here, BNRV offered Belair, who had no experience in the RV

7

industry, several days of formal training from managers and senior sales representatives, a sales training manual and time to review it, and a shadowing opportunity with a more experienced employee. Belair also received regular training on BNRV products, as compared to competitors', from visiting product representatives. BNRV's pay structure evidences its commitment to on-the-job training: sales representatives begin their employment receiving a salary even if they make no sales, before transitioning to more heavily commission-based pay. Belair cites Pennsylvania precedent holding, in the case of a window sales representative, the training the employee received was not sufficiently specialized to be protectable. *Thermo-Guard, Inc. v. Cochran*, 596 A.2d 188, 194 (Pa. Super. Ct. 1991). But whereas in *Thermo-Guard*, the sales representatives, who made sales through telephone cold calls, received no "sales training that could be considered materially different from that received by any salesman," here Belair's training was specific to the RV industry, dealing in large part with the features of BNRV's and competitors' vehicles. *Id.* Although the District Court acknowledged this training was "perhaps not the most extensive training ever provided to a new employee," it reasonably concluded a trial might well determine the training was specialized and extensive enough to merit protection. *Tilden*, 2018 WL 3350399, at *4.

Second, BNRV claims a protectable interest in Belair's knowledge of confidential information to which he had access as part of his job. In the sales context, courts have held this kind of interest justifies enforcing a restrictive covenant when, because the employee's new role relies on the same knowledge of "customers, products, technical details, and marketing strategies" as did the former role, "it is virtually inconceivable that

8

[the employee] would be able to avoid utilizing the confidential information." *Zambelli*, 592 F.3d at 424 (internal quotation marks omitted) (quoting *Nat'l Bus. Servs., Inc. v. Wright*, 2 F. Supp. 2d 701, 708 (E.D. Pa. 1998). Here Belair had access to pricing information, including BNRV's pricing guidelines for deals, the value of a product to BNRV, and general costing information. *Tilden*, 2018 WL 3350399, at *5. Although Belair notes certain pricing information may be publicly available and thus not confidential, the District Court identified other price elements established in the record as both important and confidential, such as "the minimum amount of profit that BNRV has to make on a deal, the actual cost to BNRV and what BNRV paid for a vehicle." *Id.*

Third, BNRV claims an interest in the customer goodwill Belair would bring with him from BNRV to Chesaco. "[G]oodwill represents a preexisting relationship arising from a continuous course of business which is expected to continue indefinitely." *Butler v. Butler*, 663 A.2d 148, 152 n.9 (Pa. 1995). Here, as the District Court explained, "Belair met customers while employed at BNRV, gave out his cell phone number to them and allow[ed] them to contact him with RV-related issues. Belair had no prior relationship with any of these customers." *Tilden*, 2018 WL 3350399, at *5. Belair notes he did not bring any customer lists or customer documents with him when leaving BNRV. But the District Court's opinion rested not on formal customer lists, but on evidence of Belair's ongoing relationships.

Evaluating these three potential types of interests, then, the District Court reasonably determined there was a likelihood that BNRV had a protectable interest in restricting Belair's employment with Chesaco.

9

**2.**

The final condition for enforcement of BNRV's non-compete agreement is the reasonableness of the agreement's scope in geography and duration. The District Court found Belair did not contest this element. Belair now disagrees, claiming the evidence in the record "raises a question as to the reasonableness of *any* restriction, let alone restrictions of 50 miles and one year." Appellant's Br. 29. But Belair does not actually identify a specific aspect of the geography and duration of the agreement he believes is unreasonable. By arguing any non-compete agreement would be unreasonable in this context, Belair simply repeats his argument that the restrictions were not necessary to protect the employer's interests. Moreover, the District Court modified the scope and duration of the restrictions to ensure they would not exceed BNRV's interests. The District Court "blue-penciled" the agreement to allow Belair to work at a Chesaco location well within 50 miles of BNRV, in contradiction of the agreement's actual terms, because that location's focus on used vehicles meant it was not a direct BNRV competitor. The District Court also ceased its enforcement of the restrictive covenant altogether after about four months, significantly less than the full year specified in the agreement.

Because the parties agree the restrictive covenant was incident to Belair's employment, and BNRV has demonstrated a likelihood that it has a protectable interest in restraining Belair's employment and that the geographic and temporal scope of the agreement as enforced likely did not exceed that interest, BNRV has shown a likelihood of success on the merits.

**B.**

BNRV has also demonstrated potential irreparable harm, the second threshold factor necessary to obtain a preliminary injunction. *Reilly*, 858 F.3d at 179. "Irreparable harm" means harm "such that legal remedies are rendered inadequate." *Anderson v. Davila*, 125 F.3d 148, 163 (3d Cir. 1997). Here, as the District Court explained, "Belair learned about BNRV's products, pricing strategy and other things that can be used to compete with BNRV and cause harm to it that cannot be calculated." *Tilden*, 2018 WL 3350399, at \*5. The court held Belair might harm BNRV's customer goodwill by using his training, confidential information, and personal customer goodwill to attract sales and customer loyalty from BNRV to Chesaco.

Belair argues the record includes no evidence he has already caused harm to BNRV's interests during his week of work at Chesaco Shoemakersville. But BNRV is not required to demonstrate irreparable harm did occur, only that it would likely have occurred absent the TRO. *See Anderson*, 125 F.3d at 163–64 (irreparable harm inquiry concerns threat of future harm, not past harm). The District Court reasonably found, had Belair continued work at Chesaco Shoemakersville, BNRV would have suffered irreparable harm.

**C.**

The District Court did not abuse its discretion in balancing these two factors with the remaining two, the potential for harm to Belair himself and the public interest. *Reilly*, 858 F.3d at 179. Belair's alleged harm is that he was not able to work in sales for his preferred employer at his preferred location for just over four months. The District Court

11

appropriately worked to minimize the harm to Belair, while also protecting BNRV's interests, by modifying the agreement to allow Belair to work at a Chesaco Fredericksburg, and by shortening the length of any employment restrictions from one year to approximately four months.

Nor did the District Court evaluate the public interests at stake in the case incorrectly. Belair argues the Court should have favored the public interest "in employers being free to hire whom they please and in employees being free to work for whom they please." Appellant's Br. 44 (quoting *Bimbo Bakeries, USA, Inc. v. Botticella*, 613 F.3d 102, 119 (3d Cir. 2010)). The Court, though, identified other public interest factors favoring BNRV in this case: enforcement of the agreement would "discourage the wrongful use of confidential information, protect legitimate business interests and prevent unlawful competition." *Tilden*, 2018 WL 3350399, at *6; *see id.* (holding, on the facts of the case, protection of confidential information "outweighs the temporary restriction on [the former employee's] choice of employment"). This reasoning provided sufficient support for the conclusion that the public interest favored enforcement of the agreement.

In light of BNRV's likelihood of success, the likelihood of irreparable harm to BNRV absent preliminary relief, the court's minimization of harm to Belair, and policy factors favoring both enforcement and non-enforcement of a non-compete agreement, the District Court did not abuse its discretion in finding the balance of the equities favored BNRV.

**III.**

12

Belair next challenges the District Court's failure to require BNRV to post a bond in conjunction with the issuance of the preliminary injunction pursuant to Federal Rule of Civil Procedure 65(c). Here, Belair is correct. The Federal Rules' requirements are firm: "[t]he court may issue a preliminary injunction . . . *only* if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c) (emphasis added). The District Court must set a bond even where the parties have neglected to raise the issue. *Zambelli*, 592 F.3d at 426. There is an "extremely narrow exception" allowing for waiver of the bond requirement only "when complying with the preliminary injunction raises no risk of monetary loss to the defendant," and the District Court "make[s] specific findings" in support of that conclusion. *Id.* (quoting *Hoxworth v. Blinder, Robinson & Co.*, 903 F.2d 186, 210 (3d Cir. 1990); *Elliott v. Kiesewetter*, 98 F.3d 47, 60 (3d Cir. 1996)) (internal citations omitted). But we have held a former employee enjoined to comply with a non-compete agreement does not fall within this exception. *Zambelli*, 592 F.3d at 426. Moreover, there is no indication in the record that the District Court considered requiring BNRV to post a bond, or made any findings to excuse it from doing so.

BNRV argues it is not necessary to vacate the preliminary injunction because the restrictions on Belair's employment have long since lapsed, after the District Court vacated those portions of its initial TRO in July 2017. But because no final determination on the merits has yet been made in the underlying action, the rationale for requiring a bond has not disappeared. Although the District Court has held, and we affirm, that it

13

appropriately issued the preliminary injunction, it remains possible the Court will ultimately find for Belair, potentially entitling him to damages for harm suffered while the TRO was enforced against him. *See*, *e.g.*, *Nintendo of America, Inc. v. Lewis Galoob Toys, Inc.*, 16 F.3d 1032, 1036 n. 4 (9th Cir. 1994) (explaining even where there was no abuse of discretion in the grant of a preliminary injunction, later determination on the merits may nonetheless prove the defendant was "wrongfully enjoined"). The Court's July 2018 preliminary injunction, moreover, continues to enjoin Belair from "violating any other provisions of the Agreement until the applicable time periods have expired." App. vol. I 6. It is possible this continuing injunction presents minimal risk to Belair, but if the Court wished to waive the bond requirement, it was required to consider the question explicitly. We therefore vacate the preliminary injunction and remand to the District Court to determine in its discretion whether to reissue the injunction after appropriate consideration of the Rule 65(c) bond requirement.

## IV.

Finally, Belair challenges the preliminary injunction's award to BNRV of "attorneys' fees from the time of filing of this action up to and including the July 7, 2017 hearing," in an amount yet to be calculated. *Id.* at 6. Because we vacate the preliminary injunction, we vacate its award of attorneys' fees. But should the District Court reissue the preliminary injunction, Belair offers no legal reason why the District Court may not reinstate its award to BNRV.

Belair and BNRV's agreement provides for attorneys' fees to Belair in the event of an enforcement suit. In Pennsylvania, "parties may contract to provide for the

14

breaching party to pay the attorney fees of the prevailing party in a breach of contract case" as long as such fees are "reasonable." *McMullen v. Kutz*, 985 A.2d 769, 776–77 (Pa. 2009). Citing analogous federal law, Belair argues an interim award of attorneys' fees is inappropriate at the preliminary injunction stage because it is not certain that BNRV will ultimately prevail on the merits. *People Against Police Violence v. City of Pittsburgh*, 520 F.3d 226, 234 (3d Cir. 2008). Here, although proceedings on the underlying claims remain, the District Court has made its final assessment of the propriety of the preliminary injunction. The preliminary injunction if validly issued is enough to render BNRV a prevailing party because it "alter[s] the legal relationship among the parties in a manner that afford[s] plaintiffs substantial relief on the merits of their claims." *Id.* Under a valid preliminary injunction, BNRV will have received what it sought: enforcement of restrictions on Belair's employment for almost the entire the period it requested. Pennsylvania law does not bar an award of attorneys' fees to a party in this posture.

## V.

For the foregoing reasons, although the District Court correctly held that the 2016 Confidentiality/Non-Compete Agreement is enforceable as modified by the District Court's orders, we vacate the preliminary injunction including its attorneys' fees award for failure to comply with the requirements of Rule 65(c), and remand to the District Court for proceedings consistent with this opinion.