**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

Nos. 12-1630 and 12-2386
_____

NATIONAL AMUSEMENTS INC., a Maryland Corporation,
Appellant

v.

THE BOROUGH OF PALMYRA, a municipal corporation of
the State of New Jersey; ENVIRONMENTAL RESOURCES
MANAGEMENT, INC.; MUNITIONS MANAGEMENT
GROUP, LLC
_____

APPEAL FROM THE UNITED STATES DISTRICT
COURT
FOR THE DISTRICT OF NEW JERSEY
(D.C. Civil No. 1-08-cv-02469)
District Judge: Honorable Joseph E. Irenas
_____

Submitted Under Third Circuit LAR 34.1(a)
March 21, 2013
_____

Before: FUENTES, CHAGARES and BARRY,
*Circuit Judges*

(Opinion Filed: May 9, 2013)
_____

Marc D. Haefner, Esq.
Nicole B. Dory, Esq.
Kevin J. Coakley, Esq.
Connell Foley LLP
85 Livingston Avenue
Roseland, New Jersey 07068

*Counsel for Appellant*


Richard L. Goldstein, Esq.
Walter F. Kawalec, III, Esq.
Marshall, Dennehey, Warner, Coleman & Goggin
200 Lake Drive East
Woodland Falls Corporate Park, Suite 300
Cherry Hill, NJ 08002

*Counsel for Appellee*

_____

OPINION OF THE COURT
_____

BARRY, *Circuit Judge*

## I.

In 2008, the Borough of Palmyra ("Palmyra") ordered closed for five months an open-air flea market, owned and operated by National Amusements, Inc. ("NAI"), due to safety concerns posed by unexploded munitions left behind when the site had been used as a weapons-testing facility for the United States Army. NAI filed the instant action alleging that Palmyra's action violated its constitutional rights under 42 U.S.C. § 1983 and New Jersey law. During pendency of the action, NAI filed a motion for a preliminary injunction requesting that the emergency closure order be lifted. Because the parties agreed pursuant to a Consent Order that the market could resume operations subject to strict safety precautions, that motion was never decided. On February 3, 2012, the District Court granted Palmyra's motion for

summary judgment and dismissed the action in its entirety. Despite losing the summary judgment motion, NAI declared victory on its § 1983 claims based on the earlier Consent Order, and sought attorney's fees pursuant to 42 U.S.C. § 1988. The District Court denied this motion. NAI appeals both the order granting summary judgment and the order denying fees. We will affirm.

## II.

From 1976 until the present, NAI has operated an open-air flea market (the "Market") on a 65.4-acre parcel of land that NAI's predecessor had purchased from Palmyra. The Market has approximately 458 vendor locations and generates significant customer traffic. In 2002, Palmyra began considering a 186-acre redevelopment project which included NAI's parcel. As part of the project, Palmyra contracted with Environment Resources Management ("ERM") to conduct a site inspection of the proposed area. That inspection uncovered the possible presence of unexploded munitions left over from a weapons-testing facility used by the United States Army during and shortly after World War II. Following the initial inspection, ERM contracted with Munitions Management Group, LLC ("MMG") to investigate the risk to the public and redevelopment efforts and to execute a plan for the safe removal of the munitions. NAI, ERM, and MMG entered into an access agreement, pursuant to which NAI would be permitted to operate the Market on the weekends, while ERM and MMG conducted their inspections and remedial work during the week.

On March 10, 2008, however, MMG discovered an unexploded artillery shell flush with the surface of the Market's parking lot, which, because vendors often drove stakes into the ground to secure their tents, raised concerns of accidental detonation. That same day, the Borough Council of Palmyra issued a resolution authorizing Police Chief Richard Dreby to request that NAI voluntarily cease its operations, and, if NAI refused, to exercise his emergency powers to restrict public access to the Market. After NAI

3

refused to comply voluntarily, Chief Dreby issued an emergency order on March 12, 2008, restricting access to the property while MMG conducted further munitions detection and disposal. Over the course of its effort, MMG discovered and disposed of hundreds of munitions on the property, both explosive and inert.

On April 24, 2008, NAI filed the instant action, which Palmyra timely removed to federal court. The Complaint alleges that Palmyra's action (1) was arbitrary and capricious under New Jersey law; (2) violated NAI's right to procedural due process; and (3) constituted a "taking" without just compensation. The gist of the Complaint is that Palmyra overstated the danger posed by the unexploded munitions as pretext to shut down NAI's economic activity on property Palmyra had been eyeing for redevelopment. NAI contends that Palmyra's failure to enact similar restrictions on adjacent property or adopt a less restrictive course of action that could have permitted the continued operation of the Market demonstrated this surreptitious intent. NAI sought damages and injunctive relief requiring Palmyra to permit the Market to reopen and operate as it had for more than thirty years without incident.

On June 6, 2008, NAI filed a motion for a preliminary injunction to lift Chief Dreby's emergency order. Before the District Court could resolve the motion, however, the parties agreed that the Market could reopen on the weekends subject to certain institutional controls, at NAI's cost, including erecting barriers and hiring security guards to prohibit public access to hazardous areas. Pursuant to the agreement, the District Court entered a Consent Order on July 30, 2008, whereby the Market could resume operations beginning on August 13, 2008. Both parties have complied with the Consent Order, and the Market continues to operate with the agreed-upon institutional controls. The Market was closed as a result of Chief Dreby's emergency order for approximately five months.

For the next two years, the issue that was primarily litigated was whether NAI was entitled to $200,000 in interim attorney's fees related to the Consent Order. On October 8,

2010, the District Court denied NAI's application for fees subject to renewal at the end of the case. On February 3, 2012, the District Court granted Palmyra's motion for summary judgment. On May 9, 2012, the District Court denied NAI's motion for attorney's fees, holding that any success NAI had in relation to the Consent Order was based on its state law claim not its federal constitutional claims. NAI appeals both orders.[1]

## III.

Our standard of review of a district court's grant of summary judgment is plenary, and we view the facts in the light most favorable to the non-moving party. *A.W. v. Jersey City Pub. Sch.*, 486 F.3d 791, 794 (3d Cir. 2007).

### A. **Procedural Due Process**

NAI claims that Palmyra deprived NAI of due process by closing the Market without providing pre-deprivation notice or opportunity to be heard. To state a procedural due process claim, NAI must establish (1) that it was deprived of an individual interest that is encompassed within the Fourteenth Amendment's protection of life, liberty and property, and (2) that the procedures available to it did not provide due process of law. *Schmidt v. Creedon*, 639 F.3d 587, 595 (3d Cir. 2011). NAI cannot establish the second prong.

"[D]ue process, unlike some legal rules, is not a technical conception with a fixed content unrelated to time, place and circumstances." *Gilbert v. Homar*, 520 U.S. 924, 930 (1997) (quotation marks and citation omitted). While "[t]he fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner," *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976) (quotation marks omitted), the Supreme Court "has recognized, on many occasions, that where a State must act

---

[1] The District Court had jurisdiction under 28 U.S.C. § 1331 and we have jurisdiction under 28 U.S.C. § 1291.

5

quickly, or where it would be impractical to provide predeprivation process, postdeprivation process satisfies the requirements of the Due Process Clause." *Gilbert*, 520 U.S. at 930. The Court has established a three-factor balancing test to determine what process is constitutionally due:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest.

*Matthews*, 424 U.S. at 335.

NAI's private interest in maintaining revenue from the continued operation of the Market is substantially outweighed by the overwhelming government interest in protecting the public safety from the danger posed by unexploded munitions. Although the Market had operated without incident for years, NAI does not dispute the presence of unexploded munitions. Given the imperative of an efficient response to the threat to public safety, due process did not require that Palmyra provide NAI pre-deprivation notice. *See Gilbert*, 520 U.S. at 932-33 (holding that police officer arrested on drug charges was not entitled to notice and hearing prior to being suspended without pay because of state's significant interest in the officer's immediate suspension); *N. Am. Cold Storage Co. v. City of Chicago*, 211 U.S. 306, 320 (1908) (holding that the state did not violate due process by confiscating potentially contaminated food without a prior hearing).[2] Put

---

[2] NAI attempts to distinguish *N. Am. Cold Storage Co.* on the ground that munitions experts agreed that the risk to the public was low. Appellant's Br. at 33. NAI does not, however, dispute the existence of unexploded munitions close to the surface in a heavily-trafficked area. Even if NAI's attempt to minimize the potential risk to the public were convincing, it is not appropriate for us to weigh the immediacy or magnitude of the risk to the public. Under the

simply, a municipality need not conduct a pre-deprivation hearing before acting to prevent the public from walking around a surface littered with live explosives.  As NAI does not argue that the post-deprivation procedures available to it were inadequate, summary judgment was properly granted on NAI's procedural due process claim.

### B. Takings Clause

The Takings Clause of the Fifth Amendment provides that "private property [shall not] be taken for public use, without just compensation."  U.S. Const. amend. V. "The paradigmatic taking requiring just compensation is a direct government appropriation or physical invasion of private property." *Lingle v. Chevron U.S.A. Inc.*, 544 U.S. 528, 537 (2005).  The government must pay just compensation for such takings "except to the extent that 'background principles of nuisance and property law' independently restrict the owner's intended use of the property."  *Id.* (quoting *Lucas v. S. C. Coastal Council*, 505 U.S. 1003, 1032 (1992)); *see Lucas*, 505 U.S. at 1032 ("[H]armful or noxious uses of property may be proscribed by government regulation without the requirement of compensation.") (quotation marks and citation omitted).  For instance, "orders temporarily prohibiting access to crime scenes, businesses that violate health codes, fire-damaged buildings, or other areas that we cannot now foresee . . . have long been considered permissible exercises of the police power," which do not entitle the individuals affected to compensation.  *Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg'l Planning Agency*, 535 U.S. 302, 335 (2002).  It is difficult to imagine an act closer to the heartland of a state's traditional police power than abating the danger posed by unexploded artillery shells.  Palmyra's emergency action to temporarily close the Market therefore constituted an exercise of its police power that did not require just compensation.

### C. Action in Lieu of Prerogative Writ

---

circumstances, Palmyra was well within its discretion to act quickly to prevent public access to the Market without

NAI also brought an action under New Jersey law "in lieu of prerogative writ." This action permits a "court [to] set aside a municipal board decision if it is shown to be arbitrary, capricious or unreasonable, not supported in the evidence, or otherwise contrary to law." *Rivkin v. Dover Twp. Rent Leveling Bd.*, 671 A.2d 567, 580-81 (N.J. 1996). Under New Jersey law, a court reviewing an action under this standard applies a test of "essentially . . . rational basis. Arbitrary and capricious action . . . means willful and unreasoning action, without consideration and in disregard of circumstances. Where there is room for two opinions, action is [valid] when exercised honestly and upon due consideration, even though it may be believed that an erroneous conclusion has been reached." *Worthington v. Fauver*, 440 A.2d 1128, 1139 (N.J. 1982) (alteration in original) (quotation marks and citation omitted). Under this deferential standard, NAI cannot prevail.

Even if NAI is correct that Palmyra's public safety motive was pretextual, it is undisputed that there were unexploded munitions on the property. While the property had been free from incident since 1955, NAI concedes that there was at least a "low" risk of injury or death. Palmyra was not required to adopt the option most protective of NAI's rights. Rather, Palmyra was required to act rationally and not arbitrarily and capriciously. Even if there were valid alternatives that would have kept the Market open—such as instituting the controls adopted in the Consent Order—no reasonable finder of fact could determine that Palmyra acted arbitrarily or capriciously by temporarily restricting access to NAI's property. Accordingly, the District Court properly dismissed NAI's action in lieu of prerogative writ.

## IV.

NAI also appeals the District Court's denial of interim attorney's fees. "We exercise plenary review over legal issues relating to the appropriate standard under which to evaluate an application for attorneys' fees. . . . We review the reasonableness of the District Court's award of attorneys' fees

___

holding a hearing.

for abuse of discretion." *People Against Police Violence v. City of Pittsburgh*, 520 F.3d 226, 231 (3d Cir. 2008).

Under 42 U.S.C. § 1988, "[i]n any action or proceeding to enforce a provision of section[] . . . 1983 . . . of this title, the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs." Despite having its claims dismissed in their entirety and on the merits, NAI claims victory on its § 1983 claims based on the Consent Order authorizing NAI to reopen the Market. The District Court disagreed, finding that although the Consent Order could have conferred "prevailing party" status, any success was based only on NAI's state law action, not its constitutional claims. We will affirm for different reasons.[3]

A consent order may serve as a basis for awarding attorney's fees. Parties are considered "prevailing parties" if "they succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). Accordingly, "settlement agreements enforced through a

---

[3] The District Court relied on *Luria Bros. & Co. v. Allen*, 672 F.2d 347, 357-58 (3d Cir. 1982), in which we held that a party that loses its § 1983 claim does not become a "prevailing party" if that party prevails on a related state claim. The Court examined NAI's moving papers, noting that on the "likelihood of success" prong of its argument, NAI "primarily argued that Plaintiff will succeed on the merits of the [state] claim for an action in lieu of prerogative writ. . . . Although [NAI] also devoted a page to the due process claim, the argument was not pursued further." J.A. 33. Therefore, the Court concluded that "any success that [NAI] had by way of the Consent Order was based only on . . . [the] action in lieu of prerogative writ." *Id.* Because NAI's brief in support of the injunction did reference due process, and the Consent Order—as would be expected—did not include a legal basis for the resolution, we will not speculate, after the fact, as to whether the Consent Order was based solely on NAI's state law claims.

consent decree may serve as the basis for an award of attorney's fees." *Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Res.*, 532 U.S. 598, 604 (2001); *see P.N. v. Clementon Bd. of Educ.*, 442 F.3d 848, 853 (3d Cir. 2006) (finding that a settlement confers prevailing party status "where it alters the legal relationship of the parties and is judicially sanctioned"). We have also held that temporary relief may support § 1988 fees, even if the prevailing party does not obtain a final judgment in its favor. *People Against Police Violence*, 520 F.3d at 235-36 (upholding award of attorney's fees where organizer of rally obtained preliminary injunction, but new legislation mooted case before final judgment).

We have never held, however, that a party may recover attorney's fees under § 1988 for interim relief when a district court ultimately dismisses the party's § 1983 claims *on their merits*. The Supreme Court's decision in *Sole v. Wyner*, 551 U.S. 74 (2007) is instructive. In *Sole*, the plaintiff challenged Florida's "bathing suit" rule under the First Amendment. The plaintiff also sought preliminary relief permitting a protest the next day in which naked participants would form a peace sign at a state beach. *Id.* at 78. The district court granted the preliminary injunction on the condition that the state could put up a barrier to shield beachgoers who did not wish to see the nude artwork. *Id.* at 79-80. Ultimately ruling on the merits with the benefit of a fuller record, however, the district court found that the state's prohibition on nudity in state parks was constitutional, and dismissed the case. *Id.* at 80-81. Because the plaintiff had succeeded in securing a preliminary injunction, however, the district court awarded her interim § 1988 attorney's fees. *Id.* at 81.

The Supreme Court reversed, holding that a party that obtains preliminary relief is not a "prevailing party" if that party loses on the merits a final decision denying permanent injunctive relief. 551 U.S. at 84. The Court rejected the plaintiff's argument that "she got precisely what she wanted when she commenced th[e] litigation: permission to create the nude peace symbol without state interference." *Id.* at 83. Rather, it found "[o]f controlling importance . . . , [that] the

10

eventual ruling on the merits for defendants after both sides considered the case fit for final adjudication, superseded the preliminary ruling. [The plaintiff's] temporary success rested on a premise the District Court ultimately rejected." *Id.* at 84-85. Accordingly, the Court held that "a plaintiff who 'secur[es] a preliminary injunction, then loses on the merits as the case plays out and judgment is entered against [her], has '[won] a battle but los[t] the war." *Id.* at 86 (quoting *Watson v. Cnty. of Riverside*, 300 F.3d 1092, 1096 (9th Cir. 2002)).

So too here. The Consent Order resolving the motion for a preliminary injunction motion did grant some of the relief sought by NAI: the reopening of the Market. To the extent that NAI achieved success in securing the Consent Order based on its constitutional claims, however, these claims "rested on a premise the District Court ultimately rejected." *Id.* at 85. Once the case was deemed fit by both parties for final adjudication, the Court denied NAI's § 1983 claims on their merits; the "same claim[s] [NAI] advanced in [its] preliminary injunction motion." *Id.* at 86; *see also People Against Police Violence*, 520 F.3d at 234 (noting that where initial relief proves fleeting, attorney's fees are inappropriate). NAI may have won a battle, but it lost the war.[4]

---

[4] It is not entirely clear that NAI even won a battle. The relief achieved by the Consent Order was not the specific relief NAI sought in its Complaint: reopening the Market which it had operated for the last thirty years. Rather, the Order reopened the Market on the condition that NAI undertake controls to eliminate the safety risk. The result could also be viewed as a success for Palmyra or, simply, a reasonable interim solution while the parties awaited a determination by the Court. *See Biodiversity Conservation Alliance v. Stern*, 519 F.3d 1226, 1232 (10th Cir. 2008) (finding that temporary relief that won the "right to have the status quo preserved," did not make the plaintiff a prevailing party once the claims were dismissed). Indeed, the parties expressly agreed that the Consent Order was "not meant to waive any rights that any of the parties currently have in law or in equity or which may be later obtained." J.A. 235. In other words, the Consent Order did

11

"The purpose of § 1988 is to ensure 'effective access to the judicial process' for persons with civil rights grievances." *Hensley*, 461 U.S. at 429 (1983) (quoting H.R. Rep. No. 94-1558, p. 1 (1976)). This purpose is not furthered by awarding fees when a plaintiff includes constitutional claims in its complaint and achieves a modicum of interim relief before these claims can be disposed of on the merits. Indeed, were that to become the practice, plaintiffs might be encouraged to include meritless § 1983 claims to leverage their negotiating positions, hardly the purpose of § 1988. The District Court properly denied attorney's fees.

## V.

For the reasons set forth above, we will affirm the order of the District Court granting Palmyra's motion for summary judgment and its order denying interim attorney's fees to NAI.

---

not purport to resolve any of the *merits* of NAI's constitutional claims. By proceeding to summary judgment, the parties left that determination to the final order of the District Court.