**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 16-1256
_____

PATRICIA JENNINGS-FOWLER,

Appellant

v.

CITY OF SCRANTON;
MAYOR CHRISTOPHER DOHERTY, Individually;
UNKNOWN ADDITIONAL DECISION MAKER

_____

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(D. C. Civil Action No. 3-14-cv-00969)
District Judge:  Honorable Malachy E. Mannion

_____

Argued on October 5, 2016

Before:  SHWARTZ, GREENBERG and ROTH, <u>Circuit Judges</u>

(Opinion filed: February 23, 2017)

Cynthia L. Pollick          (**Argued**)
The Employment Law Firm
363 Laurel Street
Pittston, PA 18640

          Counsel for Appellant

Kevin M. Conaboy          **(Argued)**
Abrahamsen, Conaboy & Abrahamsen
1006 Pittston Avenue
Scranton, PA 18505

Counsel for Appellees

---

O P I N I ON*

---

**ROTH**, <u>Circuit Judge</u>:

Patricia Jennings-Fowler appeals the dismissal of three of her claims, the entry of summary judgment on one claim, and the denial of leave to further amend her Complaint. We will reverse the grant of summary judgment on the due process claim and the order, dismissing her retaliation claim. We will affirm the District Court in all other regards.

**I.**

Jennings-Fowler worked for the City of Scranton for over fifteen years, as a Housing Inspector for ten years. During this time, she openly supported Mayor Doherty's opponents, complained about sex discrimination, and filed a charge with the Equal Employment Opportunity Commission (EEOC). She was subsequently placed under video surveillance. Thereafter, the City presented Jennings-Fowler with a Notice of Charges and called her into a termination meeting on September 25, 2013. At that meeting, Jennings-Fowler was given a corrected Notice of Charges and suspended

---

* This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

without pay.  She was eventually terminated on October 2, 2013.

On May 20, 2014, Jennings-Fowler filed suit against the City, Mayor Doherty in his capacity as mayor, and an "Unknown Decision Maker."  Her Second Amended Complaint contains five causes of action:  (1) violation of her due process rights for insufficient pretermination process (Due Process Claim), (2) retaliation for her political activities (Political Retaliation Claim), (3) violation of her equal protection rights through selective video surveillance (Equal Protection Claim), (4) gender discrimination and hostile work environment claims (Gender Discrimination Claims), and (5) retaliation for filing a charge with the EEOC (Gender Retaliation Claim).

Defendants moved to dismiss all causes of action against Mayor Doherty[1] and the Equal Protection Claim and the Gender Discrimination Claims against the City.  On December 29, 2014, the District Court granted all the defendants' motions and dismissed both Retaliation Claims *sua sponte*.  Jennings-Fowler filed a Motion for Reconsideration and a Motion for Leave to file a Third Amended Complaint, both of which were denied on July 2, 2015.  Defendants filed a motion for summary judgment on Jennings-Fowler's Due Process Claim against the City, which the District Court granted on January 12, 2016.  This appeal, which seeks review of all of the district judge's dispositive rulings except for dismissal of the Political Retaliation Claim and of defendant Doherty,

---

[1] Jennings-Fowler does not explicitly appeal the dismissal of claims against Mayor Doherty or allege separate claims against the Unknown Decision Maker.  We only discuss claims against the City, but note that the sufficiency of the allegations does not depend on the identity of the defendant, except where otherwise specified.

3

followed.[2]

## II.[3]

We exercise plenary review over a dismissal pursuant to 12(b)(6), as well as over a grant of summary judgment, and make all inferences in favor of the nonmoving party.[4]

### A.

Jennings-Fowler challenges the grant of summary judgment on her Due Process Claim, alleging insufficient pretermination process.

Jennings-Fowler first claims that she received insufficient notice because of errors in the first Notice of Charges. This was remedied, however, by the provision of a corrected Notice of Charges at the beginning of the termination meeting.[5]

We agree with Jennings-Fowler, however, that the content of the corrected Notice of Charges was also deficient. Jennings-Fowler was entitled to "oral or written notice of the charges against h[er], *an explanation of the employer's evidence*, and an opportunity

---

[2] Jennings-Fowler appeals the denial of her motion for reconsideration of dismissal of her claims, which is generally reviewed for abuse of discretion. We will not address the denial of reconsideration because Jennings-Fowler also appeals the dismissal of her claims, which we review under the more favorable *de novo* standard.

[3] The District Court had jurisdiction under 28 U.S.C. § 1331, and exercised supplemental jurisdiction over the Pennsylvania Human Relations Act (PHRA) claims. We have jurisdiction pursuant to 28 U.S.C. § 1291.

[4] *See Mandel v. M & Q Packaging Corp.*, 706 F.3d 157, 163 (3d Cir. 2013) (dismissal pursuant to 12(b)(6)); *Nat'l Amusements Inc. v. Borough of Palmyra*, 716 F.3d 57, 62 (3d Cir. 2013) (summary judgment).

[5] Jennings-Fowler does not argue that the timing of the corrected Notice of Charges left her no time to prepare for the termination meeting. Even if she did, providing notice at the start of a predeprivation hearing does not necessarily violate due process. *Morton v. Beyer*, 822 F.2d 364, 369 (3d Cir. 1987) (noting the Supreme Court's "continued adherence to the view that advance notice is not a *per se* requirement of due process").

4

to present h[er] side of the story"[6] in connection with the termination meeting. Failure to describe the nature of evidence supporting termination violates due process.[7] Here, the second and third charges did not provide the requisite description: both used boilerplate language to accuse Jennings-Fowler of "[t]heft, willful destruction, willful defacement or willful misuse of City Property[,]" and "[i]ntentionally falsifying or altering any City record or report[.]" Further, Jennings-Fowler specifically asked whether any video or photographic evidence existed to support these charges and was falsely told that it did not. The use of boilerplate language in the charges, coupled with the defendants' explicit lie, denied Jennings-Fowler a sufficient explanation of the evidence against her.

Since it is sufficient that the charges that were the main focus of the termination hearing failed to provide an explanation of the evidence against Jennings-Fowler,[8] we will reverse the District Court's grant of summary judgment on this claim and remand it for further proceedings.

## B.

Jennings-Fowler appeals the District Court's dismissal of her Equal Protection Claim, premised on the defendants' selective enforcement of a "secret surveillance"

---

[6] *Cleveland Board of Education v. Loudermill*, 470 U.S. 532, 546 (1985) (emphasis added). *See also Fraternal Order of Police Lodge No. 5 v. Tucker*, 868 F.2d 74, 80 (3d Cir. 1989) ("[A] *sina qua non* of a meaningful hearing is a sufficient explanation of the employer's evidence to permit a meaningful response.").

[7] *See, e.g.*, *Homar v. Gilbert*, 89 F.3d 1009, 1018-19 (3d Cir. 1996), *rev'd on other grounds*, 520 U.S. 924 (1997).

[8] In *Tucker*, plaintiffs were accused of two infractions, one for which sufficient notice was given and one for which it was not. 868 F.2d at 80. This Court vacated the district court's grant of summary judgment because one charge was insufficiently detailed, even though the plaintiffs were not terminated for that charge *per se*.

program against her.

A selective enforcement claim under the 14th Amendment lies where a facially valid law is enforced in a discriminatory way.[9]  A factual predicate of any selective enforcement claim is the existence of a law, rule, or policy.  The District Court found that such a policy did not exist,[10] and we agree.  While alleged facts must be accepted as true at this stage even if "unrealistic or nonsensical,"[11] no facts are alleged to establish that surveillance was a nondiscretionary policy or rule by defendants.  Thus, we will affirm the District Court's dismissal of this claim.

## C.

Jennings-Fowler appeals the dismissal of her sex discrimination claims under Title VII, the Pennsylvania Human Resources Act (PHRA), and Section 1983.  Since the courts interpret PHRA claims coextensively with Title VII claims,[12] we will address these together before turning to the Section 1983 claims.

### 1.

To establish a hostile work environment under Title VII and the PHRA, a plaintiff must allege, *inter alia*, that the discrimination faced was severe or pervasive as

---

[9] *Hill v. City of Scranton*, 411 F.3d 118, 125 (3d Cir. 2005).
[10] *Jennings-Fowler v. City of Scranton*, No. 14-0969, 2014 WL 7384748, at *5 (M.D. Pa. Dec. 29, 2014), *reconsideration denied,* 2015 WL 4066946 (M.D. Pa. July 2, 2015).
[11] *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 789 (3d Cir. 2016) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 681 (2009)).
[12] *See Atkinson v. LaFayette Coll.*, 460 F.3d 447, 454 n.6 (3d Cir. 2006); *Winkler v. Progressive Bus. Publications*, No. 16-938, 2016 WL 4141152, at *3 (E.D. Pa. Aug. 4, 2016).

determined by the totality of the circumstances. [13] Relevant factors in this determination include "the frequency of the . . . conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance."[14] Jennings-Fowler claims that a male coworker, Shelly Roberts, slammed photos on her desk and demanded that she explain a work decision; complained that she was at an inspection even though she was supposed to be there; asked her to redo her work, even though it was better than that of her male counterparts; and disparaged her in front of her peers and the public. These incidents, while annoying and possibly embarrassing, do not rise to the level of humiliating or threatening, and did not unreasonably interfere with Jennings-Fowler's job.

Jennings-Fowler's disparate treatment claim similarly fails. The prima facie case for sex discrimination requires Jennings-Fowler to show, *inter alia*, that she suffered an adverse employment action.[15] Although Jennings-Fowler does not explicitly allege any adverse employment action, her Complaint can be read to allege constructive discharge.[16] The degree of harassment necessary to prove constructive discharge is greater than the minimum needed to prove a hostile work environment.[17] Because the conduct alleged is

---

[13] *Mandel,* 706 F.3d at 167-68.
[14] *Id.* at 168 (internal quotations and citation omitted).
[15] *Shramban v. Aetna*, 262 F. Supp. 2d 531, 538 (E.D. Pa. 2003), *aff'd,* 115 F. App'x 578 (3d Cir. 2004).
[16] Jennings-Fowler claims that her male co-workers "received preferential treatment since they were not subject to Mr. Roberts' harassment," JA 58, and that "[d]espite complaining, the [City] refused to remedy the hostile working environment." JA 57.
[17] *Spencer v. Wal-Mart Stores, Inc.*, 469 F.3d 311, 316 n.4 (3d Cir. 2006) (citing *Landgraf v. USI Film Prods.*, 968 F.2d 427, 430 (5th Cir. 1992), *aff'd*, 511 U.S. 244 (1994)).

not sufficiently severe or pervasive to constitute a hostile work environment claim, it also falls short of a constructive discharge claim. For these reasons, the claims under Title VII and the PHRA fail.

2.

Jennings-Fowler's hostile work environment claim, pursuant to Section 1983, also fails. Such a claim may only lie against a municipality if the injury was caused by "execution of a government's policy or custom."[18] Policy is made "when a decisionmaker . . . issues an official proclamation, policy, or edict," and custom involves practices "so permanent and well settled as to virtually constitute law."[19] Jennings-Fowler argues that the City's actions constituted official policy and custom by "ma[king] the official decision not to correct the harassment" and not providing gender discrimination training. Neither allegation rises to the level of policy or custom. A municipality may also be held liable due to the actions of a particular policymaker, when a particular "policymaker is responsible either for the policy or, through acquiescence, for the custom."[20] Here, Jennings-Fowler seems to allege that the Unknown Decision Maker was a policymaker who acquiesced in Roberts's harassment.[21] Such acquiescence is only actionable if "authorized policymakers approve a subordinate's decision *and the basis for*

---

[18] *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1480 (3d Cir. 1990) (internal quotation marks and citation omitted), *superseded in part by statute*, Civil Rights Act of 1991, Pub. L. No. 102-166, 105 Stat. 1072; *see also*, *Robinson v. City of Philadelphia*, No. 15-1574, 2015 WL 5965003 at *7 (E.D. Pa. October 13, 2015).

[19] *Andrews,* 895 F.2d at 1480 (internal quotation marks and citations omitted).

[20] *Andrews*, 895 F.2d at 1480.

[21] Jennings-Fowler merely alleges that the Unknown Decision Maker is a policymaker; however, identifying policymakers is a legal question for the court to decide. *See Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 737 (1989).

*it*."[22]  Here, no facts suggest that the Unknown Decision Maker approved of Roberts's behavior and the sexually discriminatory basis for it.

Insofar as Jennings-Fowler alleges supervisory liability for her hostile work environment claim, courts must determine whether the defendant had actual supervisory authority over the harassing coworker.[23]  If so, the plaintiff must then establish the defendant's "personal direction or . . . actual knowledge and acquiescence" in the harassment, which "must be pled . . . with appropriate specificity."[24]  Jennings-Fowler fails to allege that either individual defendant had actual supervisory authority over Shelly Roberts.  Even assuming supervisory authority, Jennings-Fowler's Complaint fails to allege facts suggesting that defendants acquiesced in the harassment.  In the absence of any additional allegations, we decline to infer that the individual defendants participated or acquiesced in Jennings-Fowler's harassment.  Thus, her sex discrimination claims under Section 1983 fail as well.

---

[22] *Andrews*, 895 F.2d at 1481 (internal quotations and citation omitted) (emphasis in original); *see also Albright v. City of Philadelphia.*, 399 F. Supp. 2d 575, 594 (E.D. Pa. 2005).

[23] "[A defendant] can[not] be held liable under § 1983 for failing to take action to correct the behavior of an individual over whom he had no actual control" and a higher-ranked individual does not necessarily have supervisory authority over a lower-ranked employee. *Robinson v. City of Pittsburgh*, 120 F.3d 1286, 1294 (3d Cir. 1997), *abrogated on other grounds by Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53 (2006).

[24] *Andrews*, 895 F.2d at 1478 (internal quotation marks and citation omitted).  We have not reexamined this theory of Section 1983 liability in the wake of the *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), but have noted that it may have been altered by that decision.  *See Argueta v. U.S. Immigration & Customs Enforcement*, 643 F.3d 60, 70 (3d Cir. 2011) ("To date, we have refrained from answering the question of whether *Iqbal* eliminated— or at least narrowed the scope of—supervisory liability . . ..").  We need not answer this question here, however, as Jennings-Fowler's claims fail for other reasons.

**D.**

Finally, Jennings-Fowler argues that the District Court's *sua sponte* dismissal of her Gender Retaliation claim improperly deprived her of "notice of any vulnerability contained in Count V [the Gender Retaliation Claim]." We agree. A court may *sua sponte* dismiss a claim without affording the plaintiff notice and an opportunity to respond but "[a]s a general proposition, sua sponte dismissal is inappropriate unless the basis is apparent from the face of the complaint."[25]

Jennings-Fowler's Gender Retaliation Claim requires her to demonstrate that: (1) she engaged in protected conduct, (2) her employer took adverse action against her, and (3) a causal link exists between the protected conduct and the adverse action.[26] Jennings-Fowler's Complaint clearly satisfies the first two elements; only causality seems to be in question. The temporal proximity of Jennings-Fowler's protected activities and her suspension and termination give rise to a sufficient inference of causality at this stage.[27]

Accordingly, we will reverse the District Court's *sua sponte* dismissal of Jennings-Fowler's Gender Retaliation Claim, as it is not "patently meritless."

---

[25]*Ray v. Kertes*, 285 F.3d 287, 297 (3d Cir. 2002); *accord Roman v. Jeffes*, 904 F.2d 192, 196 (3d Cir. 1990) (noting that "a court may *sua sponte* raise the issue of the deficiency of a pleading under Rule 12(b)(6) *provided that the litigant has the opportunity to address the issue either orally or in writing*") (emphasis added).

[26] *Connelly,* 809 F.3d at 789.

[27] *See Lauren W. ex rel Jean W. v. DeFlaminis*, 480 F.3d 259, 267 (3d Cir. 2007) (noting that a causal connection can be demonstrated by "an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action"); *Mack v. Yost*, 427 F. App'x 70, 73 (3d Cir. 2011) (finding that a plaintiff had satisfied causality by alleging that adverse action was taken a week after the exercise of protected conduct).

**E.**

Finally, Jennings-Fowler appeals the District Court's decision to deny her Motion for Leave to Amend. We review denial of leave to amend for abuse of discretion.[28]

Jennings-Fowler argues that the District Court erred in its finding of undue delay, as she still had seven days to amend the Complaint under the Case Management Order. Despite this, the decision to deny leave to amend was not an abuse of discretion. The majority of the new facts alleged in the proposed Third Amended Complaint only support claims which should have survived the motion to dismiss. To the extent that the Third Amended Complaint contains facts alleging a new theory of sex discrimination, the District Court properly denied leave because of Jennings-Fowler's "repeated failure to cure deficiencies by amendments previously allowed."[29]

For the above reasons, we will affirm the District Court's decision to deny Jennings-Fowler leave to file a Third Amended Complaint.

**III.**

Thus, we will reverse the District Court's grant of summary judgment on Jennings-Fowler's Due Process Claim and *sua sponte* dismissal of Jennings-Fowler's Gender Retaliation Claim and remand for further proceedings. We will affirm the District Court on all other counts.

---

[28] *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1434 (3d Cir. 1997).
[29] *Cornell & Co., Inc. v. Occupational Safety & Health Rev. Comm'n*, 573 F.2d 820, 823 (3d Cir. 1978) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).