NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 19-1180
_____

NELSON OCASIO

v.

MAYOR MICHAEL CIACH; COUNCIL PRESIDENT
CHRISTINE PETERSON; THE BOROUGH OF UPLAND

Mayor Michael Ciach, Council President Christine Peterson,

Appellants
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Civ. No. 2-17-cv-00755)
Honorable J. Curtis Joyner, District Judge
_____

Argued February 5, 2020

BEFORE:  SHWARTZ, SCIRICA, and COWEN, Circuit Judges

(Filed: March 10, 2020)
_____

Joseph S. Oxman (argued)
Oxman Goodstadt Kuritz
1015 Chestnut Street
Suite 1500
Philadelphia, PA 19107

    Attorney for Appellee

Robert P. DiDomenicis (argued)

Mark A. Raith
Holsten & Associates
One Olive Street
Media, PA 19063

    Attorneys for Appellants

_____

OPINION[*]

_____

COWEN, Circuit Judge.

Defendants Michael Ciach and Christine Peterson ("Appellants") appeal from the order of the United States District Court for the Eastern District of Pennsylvania denying Defendants' motion for summary judgment as to the procedural due process and related conspiracy claims against Appellants. Because we conclude that they are entitled to qualified immunity, we will vacate the District Court's order to the extent that it denied the motion for summary judgment as to the claims against Appellants and will remand with instructions for the District Court to grant the summary judgment motion as to those claims (without prejudice to any rights or remedies Ocasio may possess under state law). Because this opinion resolves all pending claims, we further instruct the District Court to dismiss the complaint.

I.

This case arises out of Plaintiff Nelson Ocasio's termination as Police Chief of Upland Borough, Pennsylvania ("Upland"). At the time of his termination, Ciach was Mayor of Upland, and Peterson served as both a member of Upland's Borough Council

_____

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

2

and an Upland Police Department Administrative Assistant.  Ocasio alleged, inter alia, that Appellants and Upland ("Defendants") violated his pre-deprivation procedural due process rights under the Fourteenth Amendment and Cleveland Board of Education v. Loudermill, 470 U.S. 532 (1985).

The District Court denied Defendants' motion for summary judgment as to Ocasio's procedural due process claim against Appellants in their individual capacities. Specifically, the District Court observed that Ocasio did not attend the Loudermill hearing conducted by the Borough Public Safety Committee on February 23, 2016 (although a Fraternal Order of Police attorney evidently did attend the hearing on his behalf).[1]  He also did not attend either a second Loudermill hearing held on November 2, 2016 or the Borough Council's vote on November 16, 2016 terminating his employment.[2]  According to the District Court, Ocasio argued that the process he was afforded was biased against him.  However, the District Court held that "case law shows that where a plaintiff fails to take advantage of the hearings he was provided, his pre-deprivation due process claim will not survive summary judgment on the bare allegation that bias infected one stage of his hearings."  Ocasio v. Ciach, No. 17-cv-755, 2019 WL 158280, at *5 (E.D. Pa. Jan. 10, 2019).  The District Court also held that it had to "assess the content of the notice provided to Plaintiff in order to determine whether his opportunity to be heard was 'meaningful' under Loudermill."  Id.  The District Court

---

[1] According to Ocasio's deposition testimony, his attorney told him that he did not have to attend the hearing because he was suspended.

[2] Peterson abstained from voting, and, as Mayor, Ciach could only vote if there were a tie.

3

acknowledged that the letters notifying Ocasio that Ciach would be recommending to the

Borough Council his termination explained in detail the evidence against him.[3]

_____

[3] Specifically, the February 17, 2016 letter from Ciach recommended Ocasio's reassignment to Deputy Chief because of the following issues: (1) "**Missing Camera System**;" (2) "**Dan Smith**" (the Fire Chief who allegedly resigned from the Borough Council as a result of duress by Ocasio); (3) "**Over Budget Payroll**," (4) "**Unexplainable Administrative Pay**;" (5) "**Questionable Personnel Recommendations to Council**;" (6) an allegedly unauthorized "**Department Evaluation Report**;" and (7) "**Collection of Funds to provide Christmas Gifts to a Juvenile Crime Victim**" (for which no accounting was allegedly provided) (A34-A36). See also Ocasio, 2019 WL 158280, at *5 ("Defendant Ciach also testified that he typed this letter, summarizing his concerns with Plaintiff Ocasio's 2015 performance, on February 9, 2016 (the date located on the second page of the letter) then updated the letter on February 17th." (citing A31)). In a February 22, 2016 letter, Ciach immediately suspended Ocasio until the next Borough Council meeting:

> As a direct result of you [sic] willful disrespect and disobedience of a direct request and order to answer questions regarding your authority to order our vendor (Logan Technology, Tom Willard) to lockout Members of Council, Detective Irey and myself from the police department, and your threatening response to the same by stating "Mike, you have 5 seconds to get away from me" as witnessed by Officers VanHorn, DeLuise, Dougherty & Irey; you are immediately suspended until the next Council meeting by my authority under the Borough Code as Mayor.

(A38.) An addendum letter dated February 23, 2016 purported to summarize what had occurred since February 18 and set forth additional charges for "FAILURE TO OBEY A DIRECT ORDER/THREATENING SUPERIOR" and "REMOVAL OF BOROUGH PROPERTY." (A40.) According to Ciach, "I am amending my February 17th recommendation to a recommendation to Council that you be suspended with the intent to terminate pending the outcome of investigation." (Id. ("I will recommend that the suspension with intent to terminate be without pay.").) "[T]he Borough Public Safety Committee will hold a *Loudermill* meeting to receive my recommendations and provide you an opportunity to respond to them on FEBRUARY 23rd at 4:30 p.m. in the Borough Hall." (A41.)

A November 1, 2016 letter from the Chair of the Public Safety Committee notified Ocasio that another Loudermill hearing would be conducted on November 2, 2016 at 4:00 p.m. "The Public Safety Committee will base its final disciplinary recommendation on the conclusions set forth in the attached summary of the Buchanan Ingersoll

4

However, Ocasio essentially challenged "the validity" of the accusations. <u>Id.</u> (internal quotation mark omitted) (quoting Pl. Opp. at 10). In response to this contention, the District Court found, as a matter of law, that "the content of the notice plaintiff received before his pre-termination <u>Loudermill</u> hearings took place—its veracity and its specificity—is material to whether Mr. Ocasio was provided sufficient due process." <u>Id.</u> at *6. Having reached this legal conclusion, the District Court ultimately rejected Appellants' argument that they are entitled to qualified immunity, reasoning that "where it is in dispute whether Defendants Ciach and Peterson violated Plaintiff's right to pre-deprivation procedural due process – including notice – 'has been clearly established for many years,' we find that Defendants are not entitled to qualified immunity."[4] <u>Id.</u> at *7 (citation omitted) (quoting <u>Yelland v. Abington Heights Sch. Dist.</u>, No. 3:16-cv-2080, 2018 WL 3217643, at *9 (M.D. Pa. Jul. 2, 2018)).

## II.

It is well established that the qualified immunity doctrine "is guided by two questions: (1) did the government actor violate a constitutional right? and (2) was that

investigation report" (A50). <u>See also</u> <u>Ocasio</u>, 2019 WL 158280, at *3 (noting that Ocasio called into question investigation's independence on grounds of Ciach's relationship with head investigator).

[4] The District Court also denied Defendants' motion for summary judgment as to Ocasio's individual-capacity claim that Ciach and Peterson conspired to deprive him of procedural due process. It did grant the summary judgment motion as to the remaining due process claim against Upland. We further note that the District Court previously granted Defendants' motion to dismiss all official-capacity claims, the First Amendment retaliation and Pennsylvania Whistleblower Act claims, and claims of conspiracy to violate the First Amendment and the Whistleblower Act. The only claims at issue on appeal are the individual-capacity procedural due process count against Appellants as well as the individual-capacity claim against them for conspiracy to violate Ocasio's procedural due process rights.

right 'clearly established' at the time of the challenged conduct?" Baloga v. Pittston Area Sch. Dist., 927 F.3d 742, 762 (3d Cir. 2019) (citing Dougherty v. Sch. Dist. of Phila., 772 F.3d 979, 986 (3d Cir. 2014)).  Ocasio challenges our jurisdiction over this appeal.[5] However, we have appellate jurisdiction over a denial of qualified immunity that rests on an issue of law as opposed to a factual dispute.  See, e.g., Mammaro v. N.J. Div. of Child Protection & Permanency, 814 F.3d 164, 168 (3d Cir. 2016).  Accordingly, "we lack jurisdiction to consider whether the district court correctly identified the set of facts that the summary judgment record is sufficient to prove."  Ziccardi v. City of Phila., 288 F.3d 57, 61 (3d Cir. 2002) (footnote omitted) (citing Eddy v. V.I. Water & Power Auth., 256 F.3d 204, 208 (3d Cir. 2001)).  "[B]ut we possess jurisdiction to review whether the set of facts identified by the district court is sufficient to establish a violation of a clearly established constitutional right."  Id. (footnote omitted) (citing Eddy, 256 F.3d at 208).

This appeal implicates the fundamental legal question of whether the District Court identified the correct legal principles.  We accept for purposes of this appeal that the District Court correctly set forth the "facts that the summary judgment record is sufficient to prove."  The District Court held that "[h]ere, although the letters notifying Defendant Ciach would be recommending to the council that he be terminated as Police Chief explained in detail the evidence against plaintiff," there was no basis for Ciach's claims against Ocasio (specifically his claims that Ocasio was "Over Budget with Payroll," and had "Unexplainable Administrative Pay"), and "'Ciach admitted that the

_____

[5] The District Court had subject matter jurisdiction over this 42 U.S.C. § 1983 action pursuant to 28 U.S.C. § 1331.

2015 Department Evaluation Report which he claimed was wrongfully authorized by plaintiff . . . was a total untruth.'" Ocasio, 2019 WL 158280, at *5 (quoting Pl. Opp. at 10). According to the District Court, "the content of the notice was 'fraudulent' and mere pretext for Defendants Ciach's and Peterson's retaliatory and discriminatory motives to terminate him." Id. We ask whether the District Court "erred when it applied [to this set of facts] the wrong [legal] standard by adding an element to the due process analysis that neither the U.S. Supreme Court nor the Court of Appeals for the Third Circuit has ever required." (Appellants' Reply Brief at 1 (citing Ocasio, 2019 WL 158280, at *5-*6).) We answer this question in the affirmative, concluding that the District Court committed an error of law by (1) adopting a "veracity/validity" requirement in assessing whether the content of the letters denied Ocasio a meaningful opportunity to be heard under Loudermill and (2) holding that this element was clearly established when Ocasio's pre-termination process took place. See, e.g., Ziccardi, 288 F.3d at 63 (stating that Court had appellate jurisdiction to consider argument that plaintiff is required to show defendants acted with subjective deliberate indifference and that district court did not apply correct standard).

### III.

It is undisputed that a "tenured public employee is entitled to oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story." Loudermill, 470 U.S. at 546 (citing Arnett v. Kennedy, 416 U.S. 134, 170-71 (1974) (opinion of Powell, J.); id. at 195-96 (opinion of White, J.)). "[A] *sina* [sic] *qua non* of a meaningful hearing is a sufficient explanation

7

of the employer's evidence to permit a meaningful response." Fraternal Order of Police Lodge No. 5 v. Tucker, 868 F.2d 74, 80 (3d Cir. 1989). In Tucker, the district court found that the plaintiff police officers, before they were discharged for failing to obey an order to undergo drug testing, were informed that there was a complaint of drug use involving police officers but were not told anything specific about the drug use allegations being investigated or the evidence regarding the allegations. Id. "Without this information plaintiffs and their attorneys, even assuming they were afforded the opportunity to tell plaintiffs' side of the story, had no opportunity to explain or rebut the evidence giving rise to the 'reasonable suspicion' of on-duty drug use." Id. We accordingly held that "the failure to afford plaintiffs such an opportunity prior to the deprivation of their property interests in their jobs constituted a denial of their right to procedural due process." Id.

Echoing the District Court, Ocasio acknowledges that "the letters notifying Appellee that Defendant Ciach would be recommending to the council that Ocasio be terminated as Police Chief explained in detail the evidence against plaintiff." (Appellee's Brief at 9.) Purporting to apply the Loudermill framework, the District Court and Ocasio nevertheless go too far by indicating that the veracity or validity of the pre-termination notice's description of the employer's evidence should be considered in deciding whether the notice's content provides the employee with a meaningful opportunity to present his or her side of the story. They do not cite to any case law establishing that the notice must satisfy some sort of veracity or validity requirement—or any requirement that the notice must set forth exculpatory evidence or present the employee's side of the story. On the

8

contrary, the police officers in Tucker were not told "'anything specific'" about the drug use allegations or the evidence regarding those allegations. Tucker, 868 F.2d at 80.

In Jennings-Fowler v. City of Scranton, we likewise determined that the charges failed to describe the nature of the evidence supporting termination. 680 F. App'x 112, 116 (3d Cir. 2017) ("Here, the second and third charges did not provide the requisite description: both used boilerplate language to accuse Jennings-Fowler of '[t]heft, willful destruction, willful defacement or willful misuse of City Property[,]' and 'intentionally falsifying or altering any City Record or report[.]'" (alterations in original)). While this non-precedential decision did refer to defendants' "explicit lie," their lie denied the existence of evidence supporting termination, thereby hindering the plaintiff's opportunity to respond to the evidence against him. Id. ("Further, Jennings-Fowler specifically asked whether any video or photographic evidence existed to support these charges and was falsely told that it did not."). Similarly, in Yelland, the district judge explained that "charges that do not contain the requisite description and that simply use boilerplate language are not sufficient." Yelland, 2018 WL 3217643, at *8 (citing Jennings-Fowler, 680 F. App'x at 116) (further observing that notice was particularly important given absence of any negative evaluations or incidents in past). The Yelland court identified genuine issues of material fact as to whether "the plaintiff had notice of all of the specific grounds and evidence regarding his suspension with pay and, as a result, whether he was given a chance to tell his full side of the story as to each specific charge." Id.

In the end, the veracity or validity of the charges and evidence against Ocasio

could have been considered at the <u>Loudermill</u> hearings themselves. "[The pre-termination hearing] should be an initial check against mistaken decisions—essentially, a determination of whether there are reasonable grounds to believe that the charges against the employee are true and support the proposed action." <u>Loudermill</u>, 470 U.S. at 545-46 (citing <u>Bell v. Burson</u>, 402 U.S. 535, 540 (1971)). In this case, the letters Ocasio received did not deprive Ocasio of a meaningful opportunity to present his side of the story at two subsequent hearings. For instance, he could have then explained how there was no basis for Ciach's allegations against him regarding the budget or how Ciach and Peterson were really motivated by racism. However, Ocasio did not attend the <u>Loudermill</u> hearings (and he also did not attend the subsequent Borough Council session that voted to terminate his employment). "'In order to state a claim for failure to provide due process, a plaintiff must have taken advantage of the processes that are available to him or her, unless those processes are unavailable or patently inadequate.'" <u>Ocasio</u>, 2019 WL 158280, at *4 (quoting <u>Alvin v. Suzuki</u>, 227 F.3d 107, 116 (3d Cir. 2000)). Because Ocasio "fail[ed] to take advantage of the hearings he was provided, his pre-deprivation due process claim will not survive summary judgment on the bare allegation that bias infected one stage of his hearings." <u>Id.</u> at *5.

Accordingly, we conclude that the District Court was wrong as a matter of law to adopt a "veracity/validity" requirement in "assess[ing] the content of the notice provided to Plaintiff in order to determine whether his opportunity to be heard was 'meaningful' under <u>Loudermill</u>," <u>id.</u> In any event, any such requirement was not clearly established at the time that the pre-termination process occurred in this case (in fact, both <u>Jennings-</u>

10

<u>Fowler</u> and <u>Yelland</u> were decided after Ocasio was terminated, <u>Jennings-Fowler</u> is a non-precedential disposition, and <u>Yelland</u> is a district court opinion).[6] <u>See, e.g.</u>, <u>Mammaro</u>, 814 F.3d at 170 n.2.

## IV.

For the foregoing reasons, we will vacate the District Court's order to the extent that it denied Defendants' motion for summary judgment as to the procedural due process and related conspiracy claims against Appellants. We will remand with instructions for the District Court to grant the summary judgment motion as to those claims—without prejudice to any rights or remedies Ocasio may possess under state law.

---

[6] We also agree with Appellants that Ocasio did not have a valid conspiracy claim relating to the deprivation of his due process rights because they did not infringe such rights. Based on our ruling, and that of the District Court when ruling on the motion to dismiss, no claims remain pending in his case.

11